## Fidelity Savings Ass'n v. Board of Co. Com'rs of Arapahoe Co.

*District Court of Arapahoe County, April 30, 1900.  No. 30590.*

E. W. Smith and Joseph C. Helm for petitioner; Cass E. Herrington for respondent.

BUTLER, J.

The petitioner, The Fidelity Savings Association made return in June, 1899, to the assessor of this county of the property held by it that was in its judgment subject to taxation, the items being real estate, furniture and fixtures, and cash on hand. The assessor eliminated the item "cash on hand" and added to the schedule as filed an item of $385,510.00. On account of this item being added to the taxable property of the association, it filed a petition with the board of county commissioners asking that body to correct the assessment by striking therefrom the item of $385,510.00 added by the assessor and the item of $8,207.00 cash on hand returned by the association. That body having denied the petition, it comes to this court on appeal.

I am somewhat at a loss to determine upon what theory the assessor based his action. If he held that the association was "exercising banking powers and privileges" (3 Mills Ann. St. § 3784), within the meaning of the statute, its capital stock would be assessable and it would not be entitled to the privilege given by the statute of offsetting debts against credits. If he held that it was not "exercising banking powers and privileges" then it could offset its debts against its credits, and it could not he assessed on its capital stock.

By an examination of the original tax schedule, I find attached thereto a newspaper clipping containing a statement of assets and liabilities of the association on May 31, 1899. Among the items under the head of liabilities are the following:

Capital shares, monthly payments, etc., paid in, including credited earnings ...................$372,664.22
Contingent fund and undivided profits .......... 38,353.66

It appears by a memorandum on the schedule that the assessor divided the sum of these items by two and added the result to the amount scheduled for taxation by the association. This would indicate he held that the association was "exercising banking powers and privileges." He disregarded the item of over one million dollars scheduled among the resources of the association as "loans secured by first liens on real estate, this association's shares and on municipal bonds and warrants," which would indicate that he did not treat the association as a banking institution. Whatever his theory was he was sustained by the board of county commissioners.

I have referred to the action of the assessor not only to show the additional amount upon which the petitioner was taxed, but also to show that we are in no wise aided by the county officials in determining the real question presented by counsel during argument, i. e., are building and loan associations to be assessed as ordinary banking institutions, and are they permitted to deduct their debts, that is to say, their so called stock, from their credits. Building and loan associations are very different from corporations in general. As a rule the associations are purely mutual concerns. They have no capital stock in the strict sense of the word, and I gather from the evidence and admissions of counsel that this petitioner is in no wise different from the ordinary building and loan association relative to the accumulation of capital and the general conduct of its business. The capital upon which its business is done is collected from the stockholders periodically as dues upon shares of stock; accumulations are made by interest collected from members to whom loans are made, by the imposition of fines for failure to pay dues, etc. There seem to be no other provisions for accumulating capital. The shares of stock, so called, do not participate in the profits, distributed as divi-

dends. When a share of stock is fully paid up by a member of the association he can withdraw from the association the amount paid in by him plus the accumulated profits upon his stock. In fact, it was disclosed in this case that a stockholder can at any time draw out what he has paid in and his proportionate share of earnings less certain withdrawal fees, etc. Hence, it is apparent that the so-called capital shares are a liability of the association. In other words, the association is indebted to the shareholders to the full amount paid in by them upon the so called capital stock. It is a present as well as a future debt, a debt not subject to any contingency whatever. Even the shareholder member may cease to make his payments according to his contract, yet he does not thereby waive his right to be repaid the money he has paid in. This is not the case with ordinary joint stock companies, such as banks, railroads, telegraphs, etc. Again, building and loan associans are incorporated under a special act of the General Assembly, L. '97, pp. 121-131 which prescribes in considerable detail the manner in which the business of the association shall be conducted. In the act there is no provision made, as in the statute relative to banks and banking, 3 Mills Ann. St. § 3810, for taxing the capital stock. That is, no provision made for the payment by the association of the tax upon the capital stock and retention of the amount paid as taxes from any dividends belonging to the stockholders, which would indicate that the legislature considered the stock of the association as personal property and subject to assessment to the individual owners.

The county attorney contended that the petitioner is "exercising banking powers and privileges" and for this reason is not entitled to the benefit of section 3789, 3 Mills Ann. St. which permits the offset of credits against debts. The evidence and agreed statement show that the petitioner was organized as a building and loan association, and that it is transacting its business within the law pertaining to and governing such associations. The court's attention was called to two things as indicating that the petitioner is "exercising banking powers and privileges," viz., the statement on the window "four to six per cent paid on deposits," and the use by it of a pass book. The pass-book is used for convenience and serves the same purpose under the same contract as the yellow certificate introduced in evidence called "deposit stock." The certificates intro-

duced in evidence show the difference between this "deposit stock" and the "investment shares" held by members who make payments from month to month, etc. The holder of the deposit stock receives a fixed percentage or interest on the amount deposited by him. The sign "four to six per cent paid on deposits" call attention to this class of deposits.

By referring to the session laws of 1897, pp. 121–131, it will be seen that building and loan associations are authorized to issue their stock, among other schemes, upon the payment or Dayton plan, and that great liberality is given to all matters connected therewith. The stock may be either fully or partially paid up; the payments may be made periodically in fixed installments; the stock may be issued with or without full participation in the earnings; it may be limited dividend-bearing form, etc. I am not fully advised what the "Dayton plan" is. But Mr. Johnson, the president and manager of the association, testified that the deposit stock, whether it was represented by the yellow certificate or the passbook, was strictly in accordance with and under the "Dayton plan." Hence, I conclude that the deposit stock referred to is authorized by the statute. And, further, that paying a fixed interest on deposits represented by this class of stock does not make the association a banking concern.

It was suggested that the constitution of this state makes all the property of corporations, both real and personal, subject to taxation. This provision of the constitution is not evaded by the petitioner if it is allowed to deduct its debts (its so-called capital stock) from its credits as provided by section 3789 of 3 Mills Ann. St. The resources of the association are represented by the stock certificates. These certificates are owned by individuals They are treated under the law as personal property. They are taxable to the owner and at the place of his residence, or they should be, which amounts to the same thing. The individual owners give in under the head of "value of other shares of stock" in the schedule, the value of the stock held by them in the association; this value is ascertained by deducting the amount still due on the certificate of membership. When this stock is taxed; together with the item returned by the association, all of the property controlled by the association has been taxed. The item, "cash on hand" represents money held by the association as trustee for

its members until called for by them or loaned out as they have by their by-laws provided.

Judgment will be for the petitioner as prayed.